UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASMA SAAD, an individual, and ) <br> TOBACCO HOUSE, INC., d/b/a ) <br> Belicoso Cigar Lounge, ) <br> ) <br>     Plaintiffs, ) <br> ) <br>         vs. ) <br> ) <br> VILLAGE OF ORLAND PARK, ) <br> a municipal corporation, ) <br> ) <br>     Defendant. ) | Case No. 11 C 7419 <br> Judge Joan H. Lefkow |

## OPINION AND ORDER

Plaintiffs Asma Saad and Tobacco House, Inc. filed a two-count amended complaint against defendant Village of Orland Park, alleging that the Village violated plaintiffs' rights under the equal protection clause and that the Village's Smoking Ban Ordinance violates due process because it is unconstitutionally vague.[1]  The Village moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the motion to dismiss [Dkt. #23] will be granted.

### BACKGROUND[2]

Tobacco House is a retail tobacco store that does business as the Belicoso Cigar Lounge in the Village of Orland Park.  (Am. Compl. ¶¶ 1, 2.)  Tobacco House sells cigars, loose tobacco, and cigarettes.  (*Id.* ¶ 2.)  Tobacco House operates under a limited exemption from the Village's

---

[1] This court has original subject matter jurisdiction over plaintiffs' federal claims pursuant to 28 U.S.C. § 1331.  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to plaintiffs' claims occurred within this district, and a substantial part of property that is the subject of this suit is situated herein.

[2] Unless otherwise noted, the facts recounted in this section are taken from the amended complaint and are presumed true for purpose of resolving the pending motion.

Smoking Ban Ordinance, which prohibits smoking in all public places, including commercial establishments. (*Id.* ¶ 16.) The Ordinance's exemption provides in relevant part:

> (1) Smoking shall be permitted within the enclosed business premises known as "BELICOSO CIGAR LOUNGE" located at 15443 S. 94th Avenue wherein only smoking products and smoking equipment is sold at retail, being the only such business in the Village, provided:
>    (a) The current owner or other person in control of such business and who holds the tobacco dealer license issued by the Village keeps and maintains such license in good standing and continues to operate such business at its present location referred to above; and
>    (b) No goods, products or services are sold or delivered within the said business premises by the said tobacco dealer licensee, or anyone under said licensee's supervision and control, except for smoking products and smoking equipment.

Vill. Code § 6-2-2-12(3). Prior to September 1, 2011, Tobacco House's former president and owner, Abbas Ghaddar, held the tobacco dealer license and the general business license for Tobacco House. (Am. Compl. ¶¶ 9, 12.)

On September 1, 2011, Ghaddar was sentenced after pleading guilty to federal mail fraud and tax evasion charges which arose from a currency-skimming scheme at Tobacco House. (*See* Am. Compl. ¶ 10; Plea Agmt. & Judgment in Case No. 09-CR-999, Dkt. #92, 97; *United States v. Ghaddar*, 678 F.3d 600 (7th Cir. 2012).) The day before, on August 30, 2011, Ghaddar transferred all of his interest, including licenses, in Tobacco House to his wife, Saad, and severed his relationship with the company. (Am. Compl. ¶ 11.) That same day, Saad was appointed president of Tobacco House. (*Id.*) On September 12, 2011, Saad replaced Ghaddar as the registered agent for Tobacco House. (*Id.*)

On September 28, 2011, Saad filed an application for a general business license with the Village of Orland Park on behalf of Tobacco House. (*Id.* ¶ 13.) The Village Code provides that the Building Department shall approve an application for a business license "[i]f, after due

consideration of the information contained in the application, [it] . . . determine[s] [that] the application is satisfactory." Vill. Code § 7-1-5.[3]  On the other hand, "[i]f, after due consideration of the information contained within the application, the Building Department shall determine that matters concerning the application are unsatisfactory, it shall disapprove the application, indicating the reasons therefor." *Id.*  No license or permit may be assigned or transferred. *Id.* § 7-1-8.  A business that sells tobacco products must have a tobacco dealer's license in addition to a business license. *Id.* § 7-15-2.  The Village routinely issues business licenses to applicants who are not in violation of the Village Code so long as the applicants satisfy inspection and zoning criteria.  (Am. Compl. ¶ 21.)

A business license may be revoked by the Village Manager for cause, including for violations of the Village Code relating to other permits or licenses, where the licensee is convicted of any felony indicating an inability "to operate a safe, honest and legitimate business," or for failure to pay any "indebtedness, charge, fine or penalty" owed to the Village. Vill. Code § 7-1-16(B)(2)-(4).  Unlike her husband, Saad is not in violation of § 7-1-16(B)(2)-(4).  (Am. Compl. ¶ 14.)

On October 5, 2011, the Village notified Ghaddar of its intention to revoke Tobacco House's business license because of Ghaddar's convictions.  (*See* Dkt. #12-10, Notice of Hearing to Revoke Business License.)[4]  The Village stated that a revocation proceeding had been commenced because (1) Ghaddar had violated the Village's regulations and codes relating to

---

[3] Although not attached or referred to in plaintiffs' complaint, the court may take judicial notice of relevant provisions of the Village Code because they are in the public record.

[4] Plaintiffs refer to the Village's notice in their complaint but failed to attach a copy of the notice.  They attached a copy of the notice to their second motion for a temporary restraining order, however.  The court may properly consider the notice because it may take judicial notice of public records as well as "documents that are critical to the complaint and referred to in it." *Geinosky* v. *City of Chicago*, 675F.3d 743, 745 n.1 (7th Cir. 2012).

licenses and permits; (2) Ghaddar had been convicted of a felony indicative of his inability to operate an honest and legitimate business in the Village; (3) Ghaddar had failed to pay "any other indebtedness" owed to the Village; and (4) ownership and control of the business had changed, making Tobacco House no longer qualified for an exemption under the Smoking Ban Ordinance. (*See id.* (citing Vill. Code §§ 7-1-16-B(2)-(4) & 6-2-2-12(3)).) The Village cited Ghaddar's plea agreement in support, wherein he stated that he had under-reported Tobacco House's sales and income in his 2002 through 2009 tax returns. (*See* Plea Agmt. at 4–5.)

On October 25, 2011, the Village held a revocation hearing before the Village Manager regarding Tobacco House's business license. (Am. Compl. ¶ 15.) The Village took the position that Saad does not qualify for a business license because she is not eligible to operate Tobacco House as a smoking lounge under the exemption to the Smoking Ban Ordinance. (*Id.* ¶¶ 15, 17.) The Village Manager revoked Tobacco House's business license on November 2, 2011, after finding that the Village had demonstrated that Ghaddar had committed material violations of the Village Code, including the exemption provision in the Smoking Ban Ordinance. (*See* Dkt. #22-4, Notice of Revocation.)[5]

## LEGAL STANDARD

Plaintiffs argue that the Village's motion to dismiss must be converted to a motion for summary judgment because the court will be required to make determinations of fact in ruling on the motion. Rule 12(d) provides that the court must treat a motion to dismiss under Rule 12(b)(6) as a motion for summary judgment "[i]f . . . matters outside the pleadings are presented to and not excluded by the court." The Village's motion to dismiss does not present matters

---

[5] Plaintiffs attached the notice of revocation to their third motion for a temporary restraining order, filed twelve days after they filed their amended complaint.

outside the pleadings. The court has considered only the allegations in plaintiffs' amended complaint, relevant sections of the Village Code, and documents in the public record in ruling on the motion. Accordingly, the court need not convert the Village's motion and will instead apply the legal standard that governs motions to dismiss under Rule 12(b)(6).

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## DISCUSSION

The Village argues that the plaintiffs' claims must be dismissed because (1) plaintiffs have failed to plead an equal protection claim under a theory of a class-of-one discrimination or under a theory of national origin discrimination; and (2) plaintiffs cannot establish that Village's Smoking Ban Ordinance is unconstitutionally vague.

5

## I. Class-of-One Equal Protection Claim

Plaintiffs argue that Saad is qualified to receive a general business license on behalf of Tobacco House and that the Village's decision to revoke Tobacco Houses's business license, rather than transfer its existing license to Saad or grant her application for a new license, discriminates against them as a so-called "class-of-one." Plaintiffs' equal protection theory is not entirely clear. One possible theory is that the Village has selectively enforced the Ordinance against them but not others. *See*, *e.g.*, *Engquist* v. *Oregon Dep't of Agric.*, 553 U.S. 591, 602, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) ("[T]he Fourteenth Amendment 'requires that all persons subject to . . . legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed.'" (quoting *Hayes* v. *Missouri*, 120 U.S. 68, 71–72, 7 S. Ct. 350, 30 L. Ed. 578 (1887))); *LaBella Winnetka, Inc.* v. *Vill. of Winnetka*, 628 F.3d 937, 941–42 (7th Cir. 2010) (claim that the Village discriminated against restaurant by selectively enforcing ordinances and building codes); *McDonald* v. *Vill. of Winnetka*, 371 F.3d 992, 1003 (7th Cir. 2004) (claim that Village fire department intentionally deviated from established procedures in investigating fire at plaintiff's residence); *Vill. of Willowbrook* v. *Olech*, 528 U.S. 562, 564–65, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (claim that the Village acted irrationally and arbitrarily by demanding a 33-foot easement as a condition of connecting plaintiff's property to the municipal water supply where other residents were required to grant only a 15-foot easement).

Another possible theory is that the Ordinance on its face discriminates against plaintiffs because it creates classifications that are unrelated to any legitimate governmental purpose. *See*, *e.g.*, *Vance* v. *Bradley*, 440 U.S. 93, 95, 99 S. Ct. 939, 59 L. Ed. 2d 171 (1979) (claim that law

6

requiring Foreign Service employees to retire at age 60 but imposing no mandatory retirement age for Civil Service employees violated equal protection); *Vill. of Rosemont, Ill.* v. *Priceline.com Inc.*, No. 09 C 4438, 2011 WL 4913262, at *10 (N.D. Ill. Oct. 14, 2011) (claim that ordinance requiring owner of tax hotel or motel rooms within the village to collect and pay tax on rental of rooms violated equal protection clause because it did not apply to travel agents and other travel intermediaries).

If plaintiffs intend to state a claim under a selective enforcement theory, they must allege facts that give rise to the inference that they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Engquist*, 553 U.S. at 601 (quoting *Olech*, 528 U.S. at 564).[6] To be considered "similarly situated," comparators must be "identical or directly comparable to the plaintiff in all material respects." *LaBella Winnetka, Inc.*, 628 F.3d at 942 (citing *Reget* v. *City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)). Whether a comparator is similarly situated is usually a question of fact for the jury. *Id.* The complaint may be dismissed, however, where it fails to allege facts

---

[6]The Seventh Circuit has not resolved whether and to what extent a class-of-one plaintiff must also allege that the defendant was motivated by illegitimate animus or some other improper personal motivation in cases involving alleged discrimination by public officers, such as police officers, who exercise broad discretionary authority. *See Del Marcelle* v. *Brown Cnty. Corp.*, 680 F.3d 887, 891–93 (7th Cir. May 17, 2012) (en banc) (4-1-5 split decision) (Posner, J. leading opinion, 4 votes) (discussing divergent class-of-one precedent within both the Seventh Circuit and other Circuits); *see also id.* at 912 (Wood, J. dissenting, 5 votes) (detailing split in Seventh Circuit over whether class-of-one plaintiffs must demonstrate illegitimate animus). All of the judges in *Del Marcelle* were in agreement, however, that a plaintiff must allege intentionally discriminatory treatment that lacks a rational basis. *See id.* at 899 (Posner, J., leading opinion) ("The plaintiff must plead and prove *both* the absence of a rational basis for the defendant's action *and* some improper personal motive . . . for the differential treatment. Thus . . . our proposed standard requires the plaintiff to plead and prove *intentional discriminatory treatment* that *lacks any justification based on public duties* . . . ."); *id.* at 913 (Wood, J., dissenting) (plaintiff must allege (1) that he "was the victim of intentional discrimination, (2) at the hands of a state actor, (3) the state actor lacked a rational basis for so singling out the plaintiff, and (4) the plaintiff has been injured by the intentionally discriminatory treatment"). As discussed below, the court need not reach the issue of illegitimate animus in the present case, because the motion to dismiss can be granted on the basis of either the first or the second element of a class-of-one claim.

7

sufficient to show that the plaintiff was similarly situated to any comparators. *Id.* (citing *Stachowski* v. *Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005)).

Although they seem to be claiming selective enforcement, plaintiffs do not identify anyone who was treated more favorably than they with respect to the Ordinance. Rather, they argue that the Village's interpretation of the Ordinance is wrong, and that from this the court can infer that the Village's decision not to grant Saad's application for a business license is discriminatory. (*See* Am. Compl. ¶¶ 15–17; Dkt. #32 at 5, 8.) In the first place, the Village's interpretation of the Ordinance is not wrong. It explicitly provides that indoor smoking will be permitted at the Belicoso Cigar Lounge only so long as "[t]he current owner or other person in control of such business and who holds the tobacco dealer license issued by the Village keeps and maintains such license in good standing and continues to operate such business at its present location." Vill. Code § 6-2-2-12(3)(1)(a). The Village and the Village Manager concluded the exemption only applied so long as Ghaddar was the owner or person in control of Tobacco House. (*See* Am. Compl. ¶ 17; Dkt. #22-4, Notice of Revocation.) The fact that the Ordinance refers to the "current owner" or other person who holds "the" tobacco dealer license issued by the Village supports the Village's position that the exemption applies only if a specific individual, *i.e.*, Ghaddar, holds a specific tobacco dealer license in good standing and operates the business. In addition, as a different section of the Village Code makes clear, Ghaddar could not transfer any of the licenses he held for Tobacco House to Saad. *See* Vill. Code § 7-1-8 ("No license or permit may be assigned, sold, loaned, transferred, used as collateral or otherwise encumbered."). Finally, Saad does not hold a tobacco license, and therefore her operation of

8

Tobacco House as an indoor smoking establishment violates the terms of the smoking ban exemption. *See* Vill. Code § 6-2-2-12(3)(1)(a).

But, second and more relevant, even if the Village's interpretation of the Ordinance were wrong, that would not raise a constitutional claim within this court's jurisdiction unless plaintiffs can allege that the Ordinance was selectively enforced against it without a reason rationally related to a legitimate governmental purpose. *See Heller* v. *Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993) ("[A] classification [neither involving fundamental rights nor proceeding along suspect lines] cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate government purpose."); *Flying J. Inc.* v. *City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008) ("[A] plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." (quoting *Wroblewski* v. *City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992))). Tobacco House was the only business that benefitted from the exemption when the Village enacted the ban. *See* Vill. Code § 6-2-2-12(3)(1).[7] The Ordinance was amended in May 2011 to allow indoor smoking in retail tobacco stores that are located in a free-standing structure. *See id.* § 6-2-2-12(3)(2). Plaintiffs do not argue that Tobacco House qualifies for this new exemption. Moreover, it is unclear whether any other indoor smoking establishment has applied for, much less been granted, a business license since the Ordinance was amended. Neither does Saad allege that an applicant for a different type of business was granted a license in the face of an ordinance prohibiting that type of business. Thus, it is clear that plaintiffs cannot allege an equal protection claim based on selective enforcement.

---

[7] Plaintiffs concede this in their opposition to the Village's motion to dismiss. (Dkt. #32 at 4 ("Plaintiff is unique in so far as Belicoso is the only business to benefit from the ordinance . . . .").

Plaintiffs do not appear to be attacking the Ordinance on its face. To do so would require allegations that the Ordinance creates two classes of commercial establishments, one consisting of those that allow smoking and the other of those that do not. An argument that these classifications are unrelated to a legitimate governmental purpose would be futile. Public policy discouraging use of tobacco is, without question, a legitimate governmental purpose. *See* Family Smoking Prevention and Tobacco Control Act, Pub. L. No. 111-31, § 2 (2), 123 Stat. 1776 (2009) (Congressional finding that "[a] consensus exists within the scientific and medical communities that tobacco products are inherently dangerous and cause cancer, heart disease, and other serious adverse health effects.")[8]; Smoke Free Illinois Act, 410 Ill. Comp. Stat. 82/5 ("The General Assembly finds that tobacco smoke is a harmful and dangerous carcinogen to human beings and a hazard to public health. . . . An estimated 2,900 Illinois citizens die each year from exposure to secondhand tobacco smoke."). A ban on a smoking establishment once an existing license has expired is rationally related to that purpose.[9] Moreover, any argument that the distinction between a free-standing building and a unit within a building could not withstand rational basis scrutiny because it could readily be justified on the basis set forth in the Ordinance: "Any retail tobacco store . . . may only qualify for an exemption if located in a free standing structure . . . and smoke from the business does not migrate into an enclosed area where smoking is prohibited or into outdoor venues or areas where smoking is prohibited." *See* Vill. Code § 6-2-2-12(3)(2).

---

[8] The Family Smoking Prevention and Tobacco Control Act has been codified at 21 U.S.C. § 387, *et seq.*
[9] The Ordinance does indeed create two classifications in its exemption, but the discrimination favors the plaintiffs and could not be a basis for relief here.

Because plaintiffs have not identified similarly situated comparators or alleged facts that give rise to the inference that the Village lacked a rational basis for the classifications created by the Ordinance, they have failed to state a claim for a class-of-one equal protection violation.

## II. National Origin Discrimination Claim

In Count I of the amended complaint, plaintiffs claim that the Village's refusal to grant Saad's application for a business license or transfer Tobacco House's existing business license to Saad violates the equal protection clause because it is "irrational," "wholly arbitrary," and motivated by "ill-will and illegitimate animus." (Am. Compl. ¶¶ 23–24.) They allege that Saad's Arab-American ancestry "is at least one source of Defendant's illegitimate animus." (*Id.* ¶ 25.)

The Village, in its motion to dismiss, argues that to the extent plaintiffs seek to bring a claim alleging national origin discrimination they have failed to satisfy the pleading requirements set forth in *Iqbal* and *Twombly*. Plaintiffs do not respond to this argument in their opposition to the Village's motion. They do not cite any cases involving equal protection claims based on national origin or race discrimination. Nor do they reference race, national origin, or the fact that Saad is of Arab-American descent. Therefore, the court will assume that plaintiffs concede that they cannot allege facts that would permit an inference of discrimination based on national origin. *See Lekas* v. *Briley*, 405 F.3d 602, 614–15 (7th Cir. 2005) (even though facts alleged in plaintiff's complaint would satisfy the notice pleading requirements of Rule 8, plaintiff had waived section 1983 retaliation claim by failing to present legal arguments or cite relevant legal authority in responding to defendants' motion to dismiss).

Even if this claim were not waived, the allegations regarding national origin discrimination in the plaintiffs' complaint are insufficient to state a claim. Plaintiffs must demonstrate intentional discrimination in order to succeed on their equal protection claim. *See*, *e.g.*, *Smith* v. *Boyle*, 144 F.3d 1060, 1064 (7th Cir. 1998) ("to be actionable a denial of equal protection must be intentional"). Under *Twombly* and *Iqbal*, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [a] presumption of truth." *McCauley* v. *City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The complaint's allegations must "plausibly" suggest that the plaintiff is entitled to relief; if the allegations give rise to an "obvious alternative explanation," then the complaint may fail to adequately state a claim. *Id.* (quoting *Iqbal*, 550 U.S. at 557; *Twombly*, 550 U.S. at 567). As discussed *supra*, the language of the Ordinance and other sections of the Village Code provide an obvious alternative explanation for the Village's refusal to transfer Ghaddar's license to Saad or grant her application for a business license. The Village did not interfere with the operation of Tobacco House until Ghaddar pleaded guilty to federal crimes that were predicated on his unlawful use of Tobacco House for currency skimming. Plaintiffs have not alleged any facts to plausibly suggest that these reasons were not true but merely a pretext for discrimination based on Saad's national origin. *See Brooks* v. *Ross*, 578 F.3d 574, 581–82 (7th Cir. 2009) ("The behavior Brooks has alleged that the defendants engaged in is just as consistent with lawful conduct as it is with wrongdoing. Without more, Brooks's allegations are too vague to provide notice to defendants of the contours of his § 1983 due process claim."); *Iqbal*, 556 U.S. at 682 ("As between that 'obvious alternative explanation' for the arrests, *Twombly*, *supra*, at 567, 127 S. Ct. 1955, and

the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.").

For all of these reasons, plaintiffs have failed to state a claim upon which relief may be granted under the equal protection clause.

### III.     The Alleged Constitutional Vagueness Issue

In Count II, plaintiffs claim that the exemption in the Village's Smoking Ban Ordinance is unconstitutionally vague because it does not make clear that Tobacco House's business license would be revoked if ownership in Tobacco House is transferred from one individual to another. (Am. Compl. ¶ 30.)

A statute is unconstitutionally vague so as to violate due process if it: "(1) does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited, or (2) fails to provide explicit standards to prevent arbitrary and discriminatory enforcement by those enforcing the statute." *United States* v. *Eller*, 670 F.3d 762, 764–65 (7th Cir. 2012) (citing *United States* v. *Plummer*, 581 F.3d 484, 488 (7th Cir. 2009)). A statute need not provide "perfect clarity and precise guidance" in order to survive a constitutional vagueness challenge. *Hegwood* v. *City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012) (quoting *Ward* v. *Rock Against Racism*, 491 U.S. 781, 794, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989)). Though an ordinance "must provide explicit standards" for those who apply them, economic regulations are subject to "a less strict vagueness test." *Vill. of Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).

Vagueness challenges that do not involve First Amendment freedoms are analyzed as applied to the specific facts of the case at hand. *Plummer*, 581 F.3d at 488; *see also Hoffman*

*Estates*, 455 U.S. at 495 n.7. The Ordinance is a regulation of economic activity, which does not implicate the First Amendment. *See United States* v. *Antzoulatos*, 962 F.2d 720, 726 (7th Cir. 1992). Therefore, the court will examine the Ordinance as applied to the facts alleged, and not to "any set of hypothetical facts under which the statute might be unconstitutional." *United States* v. *Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

The meaning of the Ordinance is understandable to a person of ordinary intelligence. Tobacco House will be permitted to operate under the exemption to the smoking ban so long as either the "current owner" or "other person in control of such business" continues to maintain "the tobacco dealer license issued by the Village" in good standing. Vill. Code § 6-2-2-12(3). A corollary is that if the current owner or other person in control of Tobacco House does not have a tobacco dealer license in good standing, the smoking ban exemption does not apply.

The facts of this case do not call the plain language of the Ordinance into question. Saad, who is the person in control of the business, does not have a tobacco dealer license. The Ordinance gave Saad notice that the exemption would no longer apply once she received ownership of Tobacco House because it clearly states that whoever controls the business must have a tobacco dealer license in good standing. Saad and her husband, Abbas Ghaddar, also should have known that Ghaddar had no authority to transfer the license to Saad. *See* Vill. Code § 7-1-8. Therefore, as applied to the facts of this case, the Ordinance provides sufficiently explicit standards to put plaintiffs on notice of the law and prevent arbitrary and discriminatory enforcement.

Because the challenged ordinance is sufficiently clear, the Village's motion to dismiss will be granted as to Count II.

## CONCLUSION

For the foregoing reasons, the Village's motion to dismiss [Dkt. #23] is granted. This case is terminated.

DATED: July 9, 2012                    ENTER: _____
                                              JOAN HUMPHREY LEFKOW
                                              United States District Judge